IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                     Case No. 13-cr-675 RB

MARIA A. GARCIA,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before the Court on Defendant's Motion to Suppress Statements (*doc. 28*), Motion to Suppress Evidence and Statements (*doc. 30*), and Sealed Supplemental Motion to Suppress Statements and Evidence (*doc. 49*), each of which are fully briefed.  *See docs. 30, 42, 46, 55, 60*.  These motions have been referred to me,[1] and, on May 29, 2013, I held a hearing on them.  *See docs. 35, 51, 52, 53*.  Based on this record, I recommend the Court deny Defendant's motions.

## I.    BACKGROUND

On August 15, 2012, pursuant to a search warrant signed by a state district judge, officers of the Dona Ana County Metro Narcotics Task Force searched a residence located at 660 Manzanita, Las Cruces, New Mexico.  Among other items, agents found and seized a small red backpack with three bricks of cocaine, a purple plastic box with

---

[1] Defendant has also filed a Motion to Produce Informants and to Compel Disclosure of Information Regarding Informants.  *Doc. 26*.  At the hearing, she withdrew that motion, so it will be denied on that basis.  *Doc. 53 at 8*.

two bundles of cocaine and two digital scales, a black lock box, and a cellular phone.

On October 30, 2012, Defendant was charged in federal court via criminal complaint with possession of cocaine with the intent to distribute and using and carrying a firearm during and in relation to a crime of violence and drug trafficking. *Doc. 1.* On November 13, 2012, Defendant was charged with the same crimes via an amended criminal complaint. *Doc. 3.* On March 5, 2013, the grand jury returned an indictment charging Defendant with those same two crimes.[2] *Doc. 17.*

After the filing of the instant motions, the grand jury returned a superseding indictment charging Defendant with three counts of distribution of cocaine, one count of possession of more than 500 grams of cocaine with the intent to distribute, and one count of using and carrying a firearm during and in relation to a crime of violence and drug trafficking. *Doc. 33.* Subsequent to the hearing on the instant motions, the grand jury returned a second superseding indictment which is identical to the first with the exception of the dates alleged in counts four and five. *Doc. 58.*

Defendant seeks the suppression of evidence in this case on three bases: (1) the affidavit lacks probable cause, especially after excising allegedly inaccurate information and adding in omitted information; (2) the warrant authorizing the search was fatally overbroad; and (3) Defendant's statements during and subsequent to the search were

---

[2] The criminal complaints did not specifically charge a quantity of cocaine allegedly possessed by Defendant, but the subsequent indictment alleged that it was more than 500 grams of a mixture and substance containing a detectable amount of cocaine. *Doc. 17.*

involuntary or fruit of the poisonous tree.  I will address each of these arguments in

turn.

## II.   ALLEGED *FRANKS* VIOLATIONS AND PROBABLE CAUSE

### A.   Officer Murillo's Affidavit

On August 15, 2012, Agent Jimmy Murillo of the Dona Ana Metro Narcotics Task

Force applied to District Judge Susan Riedel of the Third Judicial District of the State of

New Mexico for a search warrant for Defendant's residence located at 660 Manzanita in

Las Cruces, New Mexico.  *Doc. 46*, Ex. 1.  The affidavit signed by Agent Murillo in

support of the requested warrant stated in full as follows:

> 1.      The Affiant learned the following facts and information from a
> reliable confidential source(s). That an individual identified as Maria A.
> GARCIA was selling cocaine from her residence(s) located at 660
> Manzanita in Las Cruces, Dona Ana County, New Mexico (NM).

> 2.      That on August 9, 2012 a confidential source(s) made contact with
> GARCIA at her residence located at 660 Manzanita, for the purpose of
> purchasing Cocaine.  The confidential source(s) met with GARCIA, at 660
> Manzanita in Las Cruces, NM. GARCIA thus met the confidential
> source(s) within the residence and removed the cocaine contained inside a
> plastic bindle from her person, handing it over to the confidential
> source(s).

> 3.      That on August 10, 2012, a confidential source(s) made contact with
> GARCIA for the purpose of purchasing Cocaine. The confidential
> source(s) met with GARCIA, at 660 Manzanita in Las Cruces, NM.
> GARCIA thus met the confidential source(s) within the residence and
> removed the cocaine contained inside a plastic bindle from her person,
> handing it over to the confidential source(s).

> 4.      That within the last 48 hrs, a confidential source(s) made contact
> with GARCIA for the purpose of purchasing Cocaine. The confidential

source(s) met with GARCIA, at 660 Manzanita in Las Cruces, NM.
GARCIA thus met the confidential source(s) within the residence and
removed the cocaine contained inside a plastic bindle from her person,
handing it over to the confidential source(s).

5.      That during all of these controlled purchases made by the
confidential source(s), surveillance Agents from the Las Cruces/Dona Ana
County Metro Narcotics were present. Surveillance Agents attempted to
maintain sight of the confidential source during the controlled operations.
At times the confidential source did exit the agents sight, each operation
only lasted between 2 to 3 minutes, which is consistent with an operation
involving the purchase of a controlled substance.

6.      That the confidential source is familiar with the appearance of the
controlled substance, Cocaine, the manner in which it is packaged, and
how it is ingested.

7.      A search of the confidential source(s) person was conducted prior
to and after each controlled purchase to insure the integrity. No money or
controlled substances were found on the confidential source(s) person
and/or source(s) vehicle for each controlled purchase.

8.      That the confidential source(s) information has been proven both
reliable and credible based on the source(s) ability to purchase the illegal
substance cocaine from the location 660 Manzanita in Las Cruces, NM.
That the confidential source(s) information has also been used in the
apprehension, arrest and/or prosecution of other defendants.

9.      That a small amount of the suspected cocaine from each purchase
was field-tested, utilizing a Scott Reagent Test Kit, each resulting in a
presumptive positive for Cocaine.

*Doc. 46*, Ex. 1 at 4-5.

### B.      The Legal Standard

Evidence discovered pursuant to a search warrant must be excluded when "the

affiant knowingly or recklessly included false statements in or omitted material

information from an affidavit in support of [the] warrant and . . . after excising such false statements and considering such material omissions … the corrected affidavit does not support a finding of probable cause."  *United States v. Garcia-Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).  The burden is on the defendant to demonstrate deliberate falsity or reckless disregard for the truth by the affiant.  *See United States v. Sullivan*, 919 F.2d 1403, 1424 (10th Cir. 1990); *see also United States v. Corral-Corral*, 899 F.2d 927, 934 (10th Cir. 1990) (focus is on credibility of affiant).  Negligence or an innocent mistake is insufficient to warrant exclusion.  *See Franks*, 438 U.S. at 171.

### C.   Officer Murillo's Affidavit is Partially Excluded

Defendant contends that Agent Murillo's testimony at the suppression hearing two falsehoods in Paragraphs 8 and 5 of his affidavit which bear on the confidential source's (CS) reliability.

#### i.   *Officer Murillo's misstatement in Paragraph 8 was merely negligent and not subject to excision*

The first alleged falsehood is found in paragraph 8 of the affidavit where Agent Murillo claims that "the confidential source(s) information has also been used in the apprehension, arrest and/or prosecution of other defendants."  *See doc. 49* at 2, 7; *doc. 60* at 4-5.  According to his hearing testimony, this statement is not accurate.  Instead, the CS's information about other individuals the CS alleged were involved in criminal activity was corroborated by information obtained in ongoing investigations of those

other individuals.  Doc. 53 at 38-39.  Agent Murillo stated that he believed this

corroboration indicated the reliability of the CS, but he conceded that the CS's

information did not lead to "the apprehension, arrest and/or prosecution of other

defendants."  *Id*. at 44.  I conclude that Defendant has failed to meet her burden that

Officer Murillo deliberately, or with reckless disregard for the truth, included this

erroneous statement in his affidavit.

Admittedly, the statement that "the confidential source(s) information has also

been used in the apprehension, arrest and/or prosecution of other defendants" was

inaccurate.  Instead, prior to seeking the search warrant, Officer Murillo vetted

information provided by the CS with other law enforcement agents conducting criminal

investigations and confirmed its veracity.  *Id*. at 38-39.  Notwithstanding the difference

between this reality and the statement in the affidavit, they share the fundamental

similarity of bolstering the CS's reliability.  Certainly, if the CS's information had

actually led to the "apprehension, arrest and/or prosecution of other defendants," it

would signal an even stronger degree of credibility. Nonetheless, Officer Murillo's error

was more of degree than kind.  Consequently, I conclude that the inaccuracy in

paragraph 8 is the result of negligence rather than deliberate falsity or reckless

disregard for the truth.

> ii.     *Officer Murillo's statement in Paragraph 5 is subject to exclusion*

The second alleged falsehood involves Agent Murillo's claim that "each

[controlled purchase] operation only lasted between 2 to 3 minutes, which is consistent

with an operation involving the purchase of a controlled substance."  In fact, the first

controlled purchase operation lasted 13-15 minutes; the second controlled purchase

operation lasted 3-4 minutes; and the third controlled purchase operation lasted 15-17

minutes.[3]

     Defendant has met her burden of establishing the Officer Murillo made this

statement with reckless disregard for the truth.  The recordings demonstrate that the

first and third controlled purchase "operations" lasted significantly longer than 2-3

minutes.  Not only is this statement grossly inaccurate in absolute terms, it is

particularly reckless given the context of the statement – which was to represent that

the CS  was only out of sight of the agents for an exceptionally short period of time.  *See*

*doc. 46*, Ex. 1 at 5. The government argues that this statement does not meet the *Franks*

standard because "the actual [time] relating to the drug transactions are not longer than

two to three minutes."  *Doc. 55* at 6.  This argument is unavailing.  I do not doubt that

---

[3] The length of the operations is the subject of some dispute.  Defendant has alleged the times described above.  *See doc. 49* at 9.  At the hearing on this matter, Defendant offered to play the tapes, which are in Spanish, to establish the times.  The Court asked the parties to stipulate to "the entire length of [each] tape and how long the [CS] was inside the house" on each occasion.  *Doc. 53* at 61.  Notwithstanding this straight-forward request, no stipulations were forthcoming.  The root of the problem is the government's attempt to transform the Court's request for "how long the [CS] was in the house" into "the length of the drug related portion of the undercover operation."  *Doc. 55* at 6, *see also doc. 60* at 6, n.1.  Unsurprisingly, Defendant's counsel has refused to make any such stipulation.  It is undisputed that the length of each tape of the controlled purchase operation is longer than 2-3 minutes.  *Doc 55* at 6.  In fact, the government has never disputed Defendant's assertion of their length as 13-15 minutes, 3-4 minutes, and 15-17 minutes respectively.  *See docs. 46, 49*.  Given the government's failure to make a good faith attempt to enter into a stipulation as directed, I will find the times to be as alleged by Defendant.

when the tapes are distilled to the actual discussions of criminal behavior (*i.e.* the drug transaction and the actual transfer), only two to three minutes remain.  But Officer Murillo explicitly stated that "each *operation* only lasted between 2 to 3 minutes."  *Doc. 46* at 5 (emphasis added). This wording simply does not lend itself, without considerable contortion, to the interpretation suggested by the government. Because Officer Murillo's statement in paragraph 5 was made in reckless disregard for the truth, it must be excised when considering whether the affidavit contains sufficient probable cause.

    **D.**     **The Search Warrant Contained Enough Information to Support a Finding of Probable Cause**

In addition to the two impugned statements discussed above, Defendant also argues that Officer Murillo deliberately omitted facts that she believes fatally undermine the reliability of the CS.  Defendant points to the following from Agent Murillo's testimony: Agent Murillo was investigating the CS for narcotics violations before his arrest on August 3, 2012, after the CS threw drugs from a stopped vehicle; Agent Murillo found drugs in the CS's vehicle and home; Agent Murillo knew the CS had a criminal record; Agent Murillo knew the CS had prior probation violations; after the CS was released from jail on August 5, 2012, the informant contacted Agent Murillo and offered to cooperate because he didn't want to go to jail; Agent Murillo knew the CS was not totally trustworthy; and to Agent Murillo's knowledge, the CS had never worked as a confidential informant.  *Doc.* 60 at 3.

Defendant has not presented any evidence beyond the fact of these omissions to show that Officer Murillo excluded this information with a sufficiently culpable state of mind.  It is true that some courts have held that even in the absence of such evidence "[i]t is possible that when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself."  *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980).  In other words, the more obviously material the omitted information, the closer a defendant will be to establishing the requisite state of mind of the affiant.  Other courts question whether this approach improperly collapses two required elements into a single inquiry regarding materiality.  *Cf. United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990).  Notwithstanding this criticism, it appears that the Tenth Circuit is willing to find a *Franks* violation may be based upon an omission if the omission is "so probative as to negate probable cause" were it included.  *Stewart v. Donges*, 915 F.2d 572, 582 n. 13 (10th Cir.1990).  Given this high standard, I must evaluate whether the affidavit includes sufficient probable cause as it now stands, and if these omissions had been included.

A judge's task when reviewing a warrant application "is simply to make a practical, common-sense decision whether, given all the facts and circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213,

238 (1983).  "The standard for probable cause only requires that the [judge] had a 'substantial basis for … conclud[ing]' that the search would uncover evidence of wrongdoing."  *United States v. Kennedy*, 131 F.3d 1371, 1378 (10th Cir. 1997) (quoting *Illinois*, 462 U.S. at 236).

Excising the statement regarding the length of the controlled purchase operations, the affidavit provided the following information: (1) the CS stated that he/she had purchased cocaine from Defendant at the residence to be searched on three occasions between August 9th and 15th; (2) these purchases occurred during controlled purchase operations done at the direction and under the supervision of law enforcement; (3) the CS was searched before each purchase and was not in possession of cocaine, but when he/she returned to the officers was in possession of cocaine; (4) during the operation, the officers were in the immediate vicinity of the residence -- the alleged location of the purchases;[4] and (5) the officers maintained visual surveillance of the CS as constantly as feasible during the controlled purchase operation.  These facts certainly establish a substantial basis for believing that Defendant was selling cocaine out of the residence and that a search thereof would yield evidence of the same.

Defendant argues that, if the additional facts which reflect poorly on the CS had

---

[4] The affidavit stated that the officer "were present."  *Doc. 46*, Ex. 1 at 5.  While the officers were obviously not in the home during the purchases, a common sense reading of this statement in context is that they were located in the immediate vicinity.

been included, probable cause would be negated.[5]  The first flaw in Defendant's argument is that the warrant was not devoid of material which reflected poorly on the CS's reliability.  The affidavit informed the judge that the CS was (1) "familiar with the appearance of the controlled substance, Cocaine, the manner in which it is packaged, and how it is ingested" and (2) easily accepted as a customer by individuals selling such a substance.  *Doc. 46*, Ex. 1.  As such, the judge was "on notice that the confidential informant was not a model citizen …."  *United States v. Avery*, 295 F.3d 1158, 1168 (10th Cir. 2002) (quotations and citations omitted).  Moreover, judges who review search warrants "often know, even without an explicit discussion of criminal history, that many confidential informants 'suffer from generally unsavory character' and may only be assisting police to avoid prosecution for their own crimes."  *Id*. (quotations and citations omitted).  Certainly, if the affidavit included the full laundry list of items Defendant suggests was necessary, it would have given a fuller picture of the type of individual being utilized by the police as a CS.  Nevertheless, when viewed from a common sense perspective, the warrant did not paint the CS in a false light for the judge.

The second flaw in Defendant's omission argument is that it is based on the premise that the CS's "reliability" is indispensable to a finding of probable cause in this case.  The Supreme Court has rejected the formal requirement that affidavits provide

---

[5] Defendant first argues that the affidavit, even as written, lacks probable cause.  *Doc. 60* at 5-9. As explained above, I conclude otherwise.

11

facts establishing the veracity or specific reliability of an informant in favor of a totality-of-the-circumstances test. *Massachusetts v. Upton*, 466 U.S. 727, 732 (1984). Under this test, "there is no need for a declaration of the reliability of an informant when the informant's information is corroborated by other information." *United States v. Sturmoski*, 971 F.2d 452, 457 (10th Cir. 1992). In the instant affidavit, the information received from the CS was that, on those three occasions, he had purchased cocaine from the Defendant at 660 Manzanita. *Doc. 46*, Ex. 1 at 5-6. These statements were strongly corroborated by the fact that each purchase was in fact a controlled purchase done at the direction and under the supervision of law enforcement. Of course, even with this supervision, it is possible that the CS obtained the cocaine with which he returned on those three occasions from someone, or somewhere, else. Nonetheless, the circumstances surrounding the controlled purchases strongly corroborated the CS's statements that it came from Defendant in that residence. With such corroboration, even assuming that based on the omitted items one would ordinarily find the CS unreliable, their inclusion would not have negated probable cause to search the residence in these circumstances. Based on the same reasoning, those omitted items were not so obviously material in the context of a CS conducting controlled purchases that one could infer a sufficiently culpable state of mind to Officer Murillo.

Plaintiff has failed to establish by a preponderance of the evidence that either (1) the omissions were deliberate falsehoods or done with reckless disregard of the truth,

or (2) the omissions would have negated the probable cause contained in the affidavit. As such, I find no *Franks* violation as to the omissions.

## III.   THERE WAS PROBABLE CAUSE TO BELIEVE THAT EVIDENCE WOULD BE FOUND AT DEFENDANT'S ADDRESS

Defendant makes an additional argument with respect to the validity of the search warrant and the sufficiency of probable cause. She contends that probable cause for a search warrant requires more than probable cause that a person committed a crime and argues that the instant warrant does not support this necessary connection to the residence at 660 Manzanita.  *Doc. 30* at 10-11.

It is true that a search warrant application must establish probable cause that evidence or contraband will be found in the place to be searched.   The instant application is demonstrably sufficient. First, the affidavit provides sufficient evidence that all three cocaine purchases occurred at that address.  This evidence includes: (a) the CS's statements regarding the purchases; (b) the fact that the officers were in the immediate vicinity during the purchases; (c) the fact that the purchases were "controlled purchases" as described above; and (d) the fact that the officers conducted surveillance during the purchases.  Second, these three purchases occurred within five days of each other, and the last one occurred within the last 48 hours.  These facts provide substantial basis to support the belief that Defendant kept the cocaine close at hand, and that evidence of such sales would still be present given the closeness in time. Consequently, I conclude that the affidavit provides the necessary probable cause to

believe that evidence of drug trafficking would be found at the residence.

## IV.   THE WARRANT WAS NOT OVERBROAD

In addition to challenging the warrant on the basis of probable cause, Defendant

also argues that it was overbroad, either because it was not sufficiently particular or

because there was insufficient probable cause as to the items to be seized.  *Doc. 30* at 12-

15.  The warrant authorized:

> The property to be seized includes any illegal controlled substances listed
> in the Controlled Substance Act, in unknown quantities along with any
> paraphernalia used for the packaging, concealment, weighing,
> distribution, transportation, sale, ingestion, and/or use of above listed
> drugs. Also to be seized are any firearms, ammunition, writings, records
> or cellular phones showing the identity of the source(s) and/or
> customer(s) of above described contraband, the prices sought or
> negotiated or paid for such drugs, amounts bought or sold. Also, any
> writing, records, utility bills and other documentation tending to show the
> identity of the person(s) who occupy, reside or have legal standing of
> above described premises and all U.S. currency in any amounts over $100
> which might be fruits of illegal drug trade.

*Doc. 46*, Ex. 1 at 3.

As to the warrant's particularity, the Fourth Amendment does not permit general

warrants which allow a "general exploratory rummaging in a person's belongings."

*Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).  This means that the warrant must

specifically describe the items to be seized.  The primary "general" item to which

Defendant points is the permission to seize "any writing, records, utility bills and other

documentation tending to show the identity of the person(s) who occupy, reside or

have legal standing of above described premises."  *Doc. 30* at 14.  Defendant complains

14

that this provision permits the seizure of all documents present in the home.  *Id*.

Defendant also points to the provision which allows the seizure of "all U.S. currency in

any amounts over $100 which may be fruits of illegal drug trade."  *Id*.

However, the "particularity requirement is satisfied when the description of an

item to be searched for and seized pursuant to the warrant 'enables the searcher to

reasonably ascertain and identify the things authorized to be seized. Even a warrant

that describes the items to be seized in broad or generic terms may be valid when the

description is as specific as the circumstances and the nature of the activity under

investigation permit. However, the Fourth Amendment requires that the government

describe the items to be seized with as much specificity as the government's knowledge

and circumstances allow, and warrants are conclusively invalidated by their substantial

failure to specify as nearly as possible the distinguishing characteristics of the goods to

be seized.'"  *United States v. Sells*, 463 F.3d 1148, 1154 (10th Cir. 2006) (quoting *United

States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988)).  Despite that it may permit the seizure

of a significant amount of documentary evidence, the provision regarding documentary

evidence in the instant warrant meets this standard because it specifically describes the

items to be seized and limits it to items which would show identity of the resident or

others who have an interest in the residence.  And, while it is a closer call, I conclude

that the provision regarding the seizure of currency also meets this standard because of

the quantity of money identified and that such money appear to be associated with

drug trafficking.

Defendant's second argument is that the affidavit lacked probable cause to search for the items listed. *Doc. 30* at 12-15.  As described in Section II, I conclude that the affidavit contained probable cause to believe that Defendant made three sales of cocaine to the CS at the 660 Manzanita residence in the week before the warrant was issued.  Given that finding, it follows that there was probable cause to search for and seize items associated with drug trafficking at the residence.  With one exception, the list set forth in the warrant is comprised of such items.  That exception is the documentation showing the "identity of person(s) who occupy, reside or have legal standing" in the residence.  Such a provision is appropriate to "gather evidence of who controlled the premises suspected of connection with criminal acts."  *United States v. McLaughlin*, 851 F.2d 283, 286 (9th Cir. 1988) (cited with approval in *United States v. Baker*, 166 F.3d 348, *4 (10th Cir. 1998) (unpublished).

Consequently, I conclude that the affidavit satisfies the particularity requirement of the Fourth Amendment.

## V.    THE GOOD FAITH EXCEPTION

Because I have found that (1) the warrant contained sufficient probable cause even after excising the one recklessly false statement and (2) the warrant was sufficiently particular, I find that there has been no Fourth Amendment violation.  Nonetheless, I will consider the issue of the good faith exception of *United States v. Leon*,

478 U.S. 897 (1984).  Where *Franks* violations are found, I agree with the Second Circuit

that the good faith exception would likely not be available to the government if

probable cause is found lacking.  *See United States v. Reilly*, 76 F.3d 1271, 1273 (2d Cir

1996).  However, as described above, I do not find probable cause lacking in this

affidavit.

The good faith exception does apply to violations of the Fourth Amendment's

particularity requirement.  *See United States v. Corral-Corral*, 899 F.2d 927, 932 (10th Cir.

1990).  Even if one were to conclude that the provision of the warrant allowing for the

seizure of the currency "which might be fruits of illegal drug trade" does not provide

enough objective guidance to the executing officer, it is a sufficiently close call that the

officers would have been able to reasonably rely on a warrant containing such a

provision.  As such, the exclusionary rule would not apply even assuming a violation of

the particularity requirement on this point.

## VI.   SUPPRESSION OF STATEMENTS

Defendant has also moved to suppress statements that she made during and

subsequent to the search of her residence as (1) fruit of the poisonous tree; (2) in

violation of *Miranda v.Arizona*, 384 U.S. 436 (1966); or (3) involuntary.

### A.   **Defendant's Statements**

While the search was being conducted, Officer Murillo interviewed Defendant.

*Doc. 53* at 31.  Prior to the interview, Officer Murillo read Defendant her *Miranda* rights,

Defendant waived those rights and consented to be interviewed. *Id*. at 32. The interview, which was recorded, was conducted in Spanish and took place in a law enforcement vehicle in the driveway of her home. *Id*. During the interview, Officer Murillo generally explained why the officers were present and confronted her with the initial discovery of a small amount of cocaine in the residence. *Id*. at 33. Defendant denied ownership of the cocaine and stated "that she believed it belonged to her son." *Id*. at 34.

After this apparently short interview and Defendant's denial, Defendant was permitted to return to the interior of her home. *Id*. Officer Murillo stayed with Defendant in her living room. *Id*. Upon her request, Defendant was allowed to smoke a cigarette. *Id*. Officer Murillo continued speaking with Defendant during this time about the investigation. *Id*. at 35. This "second" interview was not recorded but occurred approximately 30-35 minutes after the vehicle interview. *Id*. at 34. While this conversation was occurring, the searching officers located a significantly larger amount of cocaine in the bedroom of the residence. *Id*. at 35. Defendant was confronted with this second discovery and asked if this cocaine also belonged to her son. *Id*. at 35-36. She said no, and instead confessed that she had been selling this cocaine for an individual named Herman. *Id*. at 36.

At no point in either interview did Defendant indicate that she did not wish to speak to the officers, nor did she request an attorney. *Id*. at 37. At no point in either

interview was Defendant threatened nor were any promises made to her regarding her cooperation.  *Id*. at 31-37.

**B.**   **The Legal Standard**

If statements are gained from a search in violation of the Fourth Amendment, those statements must ordinarily be suppressed.  *See Wong Sun v. United States*, 371 U.S. 471 (1963).

Ordinarily, in order for a defendant's statements to be admissible at trial, the government must show that its agents have complied with the procedural safeguards of *Miranda v. Arizona*, 384 U.S. 436 (1966).  Even if *Miranda* warnings are provided, the government must show Defendant "knowingly and intelligently waived [her] privilege against self-incrimination and [her] right to retained or appointed counsel." *Id*. at 475. The Government has the burden of proving that Defendant knowingly and voluntarily waived her *Miranda* rights. *See North Carolina v. Butler*, 441 U.S. 369, 373 (1979). Additionally, the Government must prove Defendant's statements were voluntarily made.  *See Arizona v. Fulminante*, 499 U.S. 279 (1991).  A statement is involuntary if it was obtained by physical or psychological coercion or by improper inducement so that the suspect's will was overborne.  *See United States v. Erving L.*, 147 F.3d 1240, 1248-49 (10th Cir. 1998).

**C.**   **Defendant's Statements are Admissible**

**i.**   ***The statements were not the fruit of the poisonous tree***

Because the search of Defendant's residence did not violate the Fourth Amendment, there is no "poisonous tree."  As such, her statements should not be suppressed under this theory.

### ii.      *Defendant was properly advised of her Miranda rights*

It is undisputed that Defendant was provided a card which described her *Miranda* rights.  *Doc. 53* at 32.  After reading it, she told Officer Murillo that she understood her rights.  *Id*.  Immediately thereafter, she participated in a conversation with Officer Murillo.  *Id*.  At no time did she give any indication, expressly or implicitly, that she did not wish to speak with him.  *Id*. at 31-37.

### iii.      *Defendant's Miranda waiver and subsequent statements were voluntary*

The circumstances around Defendant's waiver and subsequent statement strongly support a finding that both were voluntary.  At no time during either interview were any threats or promises were made to Defendant in an effort to get her to speak to the officers.  *Id*.  There is nothing to suggest that the interviews were overly confrontational.  In fact, in the second interview, despite Defendant's earlier denials, Officer Murillo allowed her to be in her home and smoke a cigarette.  *Id*. at 34-35.  Both interviews occurred in relatively comfortable environs and were relatively short.  *Id*. at 31-37.  Defendant was never restrained via handcuffs or similar devices.  *Id*.  And, in both interviews, Officer Murillo spoke to Defendant in the language in which she felt most comfortable.  In short, all the available evidence supports a finding of

20

voluntariness as to Defendant's waiver and  statements and no evidence supports a contrary finding.

Consequently, I recommend denial of Defendant's motion to suppress her statements.

## VII.   CONCLUSION

I recommend finding that Officer Murillo's statement regarding the prior use of information from the CS was negligent and not subject to excision under *Franks*, but his statement regarding the length of the controlled purchase operations was made with reckless disregard for the truth and is subject to excision. I also recommend finding that the omission of facts related to the CS were not deliberate falsehoods or done with reckless disregard for the truth, but that even their inclusion would not have negated probable cause.  Based on the foregoing, it is my opinion that the affidavit for search warrant contained probable cause for the issuance of the warrant as presented. The search warrant application contained sufficient information to believe that evidence of a drug trafficking crime would be found at 660 Manzanita.  As such, the Court should find that the warrant was not overbroad or insufficiently particular, and any failure with respect to particularity falls within the good faith exception.

In addition, because I find no Fourth Amendment violation, I recommend finding that Defendant's statements are not fruit of the poisonous tree and Defendant was properly advised of her *Miranda* rights, which Defendant knowingly and

voluntarily waived. Defendant's subsequent statements should also be treated as

voluntary and should be admissible.  Because Defendant has failed to meet her burden

of showing a basis for suppression, I recommend denying Defendant's motion.

_____

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**